UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-20605-CR-GAYLES/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

IVAN DARIO ZAPATA,

    Defendant.
_____/

# REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS INDICTMENT

This matter is before the Court on Defendant Ivan Dario Zapata's motion to dismiss the indictment for violation of his Sixth Amendment right to a speedy trial (the "Motion").[1] [D.E. 12]. The Government filed its response in opposition on April 22, 2022, [D.E. 19], to which Zapata timely filed a reply, [D.E. 20]. Accordingly, the Motion is now ripe for disposition. Having reviewed the briefing, the record, and otherwise being fully advised in the premises, the Court recommends that the Motion be **GRANTED** and the indictment be **DISMISSED**.

---

[1] This Motion was referred to the undersigned Magistrate Judge for report and recommendation. [D.E. 13].

## I.     BACKGROUND

According to the indictment, Zapata allegedly committed two bank robberies in Miami-Dade County on July 17, 2013, in violation of 18 U.S.C. § 2113(a). [D.E. 1]. Law enforcement was unable to identify a suspect in the crimes for approximately two years. That changed in 2015, however, when Zapata was arrested on unrelated charges brought by the State of Florida. Zapata has been continuously detained in a jail in Miami-Dade County since that arrest.

Following his arrest in 2015, a witness came forward and identified Zapata as one of the suspects in the alleged bank robberies. But for reasons that the Government does not detail, it did not obtain an indictment against Zapata until July 12, 2018 – nearly five years after the alleged bank robberies and approximately three years after the Government had reason to suspect Zapata's involvement in the crimes.

An arrest warrant for Zapata was issued days after the indictment was returned, but notably the portion of the warrant reserved for documenting Zapata's last known address was left blank. [D.E. 2]. Two months later, United States District Judge Darrin P. Gayles ordered that the case be transferred to "fugitive status" until such time as Zapata was "apprehended." [D.E. 3].

Shortly thereafter, on October 3, 2018, the Government reassigned the case to another prosecutor: Assistant United States Attorney Alejandra L. Lopez. [D.E. 4]. AUSA Lopez neglected to inform the Court of the Government's knowledge that Zapata was not a "fugitive" from justice in the typical sense given his confinement in

a Miami-Dade County jail. And then, on April 20, 2020, the Government again reassigned the case to a different prosecutor: Assistant United States Attorney Marty F. Elfenbein. [D.E. 5]. Like his predecessor, AUSA Elfenbein neglected to inform the Court that the Government knew of Zapata's status as an inmate at the local jail.

It was not until January 28, 2022, that the Government informed the Court about Zapata's whereabouts. On that date, the fourth (and current) prosecutor on the case – Assistant United States Attorney Bertila Fernandez – dutifully filed a Petition for Writ of Habeas Corpus *Ad Prosequendum* in this Court. [D.E. 6]. United States Magistrate Judge Lissette M. Reid promptly issued the Writ, which directed the Warden of the MetroWest Detention Center to release Zapata into the custody of the United States Marshal Service so that Zapata could attend his initial appearance in response to the charges in the indictment. [D.E. 7].

On February 8, 2022, Zapata made his initial appearance in the Southern District of Florida. He was appointed counsel at that time and stipulated to pretrial detention at the Federal Detention Center in Miami. Trial was set for April 11, 2022, approximately three years and nine months after the return of the indictment.[2] Zapata promptly filed this Motion through his appointed federal counsel.

## II.   ANALYSIS

The Sixth Amendment to the Constitution of the United States guarantees that, in all criminal prosecutions, the accused shall enjoy the right to a "speedy" and

---

[2] The Court subsequently granted Zapata's unopposed motion to continue the trial. [D.E. 15]. The trial is now scheduled to begin on May 23, 2022, but this brief delay does not factor into the Court's Sixth Amendment analysis and effects only the expedited objection period imposed by this report and recommendation.

public trial. U.S. CONST. amend. VI. The right to a speedy trial attaches when the defendant is arrested or indicted, whichever comes first, and continues until the date of trial. *United States v. Gonzalez*, 671 F.2d 441, 444 (11th Cir. 1982).

In *Barker*, the Supreme Court established a four-prong test for determining whether a defendant's right to a speedy trial has been violated. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The four factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant as a result of the delay. *Id.*

None of the four *Barker* factors is "a necessary or sufficient condition" to the finding of a speedy trial violation. *Id.* at 533. Rather, they are "related factors" that must be considered together "with such other circumstances as may be relevant." *Id.* Nevertheless, a *Barker* analysis "must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Id.*

To trigger a *Barker* analysis, the defendant must allege that the length of the delay between the indictment and trial is presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 (1992). Delays exceeding one year are generally found to be presumptively prejudicial. *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006).

Here, the Court finds – and the Government concedes – that a *Barker* analysis is warranted because more than three years have elapsed since the indictment was returned, qualifying the delay of trial as presumptively prejudicial. *See id.* Accordingly, the *Barker* factors will be examined in turn.

### A. *The length of the delay.*

The Supreme Court has recognized that the first *Barker* factor is a "double enquiry" because it constitutes a threshold consideration for the Court that, if necessary, must be subsequently weighed and balanced against the other factors discussed in the analysis. *See Doggett*, 505 U.S. at 651. Although the Government concedes that the post-indictment delay triggers a *Barker* analysis, it disputes the weight that should be attached to the first *Barker* factor.

Zapata argues that the length of the delay should weigh heavily against the Government. The Court agrees. During the second part of the "double enquiry," the Court may consider the length of any pre-indictment delay in addition to the length of the post-indictment delay. *Ingram*, 446 F.3d at 1339. In *Ingram*, the Eleventh Circuit held that the first *Barker* factor weighed heavily against the government when a two-and-a-half-year pre-indictment delay compounded a two-year post-indictment delay. *Id.* Not only does Zapata's post-indictment delay exceed the post-indictment delay in *Ingram* by more than one year, but nearly five years elapsed between the alleged bank robberies and the return of the indictment. To be fair, Zapata was not on law enforcement's radar for a fraction of that pre-indictment time, but it still took the Government approximately three years to indict Zapata after it had reason to suspect his participation in the bank robberies.

The Government submits that the pre-indictment delay did not prejudice Zapata because the indictment was returned within the applicable statute of limitations. But even assuming the propriety of the pre-indictment delay does not

5

change the fact that this remarkable passage of time effectively compounds the damage done by the three-year, nine-month post-indictment delay at issue here. By the time that Zapata's trial begins, any eyewitness to the bank robberies will be testifying based on a nine-year-old memory that has presumably eroded with the passage of time. Accordingly, the Court finds that the length of the delay weighs heavily against the Government.

### B. *The reason for the delay.*

The Government argues that the second *Barker* factor should not weigh against it because the delay was not the product of bad faith or official negligence but rather a conscious decision to allow the State of Florida to pursue its unrelated charges against Zapata without federal interruption. Put differently, the Government allowed the State of Florida to "go first" with its cases against Zapata and, in the Government's view, such a reason should not weigh against it in a *Barker* balancing test. For this proposition, the Government relies exclusively on *United States v. Shevelev*, No. 08-cr-60159, 2014 WL 495393 (S.D. Fla. Feb. 6, 2014). But *Shevelev* is distinguishable from our case and therefore unpersuasive.

In *Shevelev*, the defendant was indicted by a grand jury in the Southern District of Florida in 2008. *Id*. at *1. At that time, however, the defendant was a fugitive from justice. *Id*. In 2010, the defendant was extradited from Greece to the United States, at which time he was arrested on a New York warrant. *Id*. A federal detainer was lodged against the defendant and, after his New York trial concluded in 2013, he was promptly transferred to the Southern District of Florida to answer the

charges in the 2008 indictment. *Id*. The Court held that the three-year, post-indictment delay caused by the New York prosecution did not violate the Sixth Amendment's speedy trial mandate because federal authorities in the Southern District of Florida acted diligently to prosecute the defendant after his New York trial concluded. *Id*.

United States Magistrate Judge Patrick M. Hunt, who authored the Report and Recommendation that was ultimately adopted in *Shevelev*, observed the implied alternative to allowing the New York prosecution and the federal prosecution to proceed consecutively: the cases would have to proceed simultaneously, necessitating the government's obligation to frequently shuttle the defendant between New York and Florida. *Id*. at *4. This concern is inapposite here because Zapata is not facing prosecutions on opposite ends of the country; he is not even facing prosecutions on opposite ends of the county. Rather, the Florida courthouse in which Zapata would be tried is less than three miles from the federal courthouse in which this case would be tried. Nothing in the record suggests that periodically transferring Zapata from state to federal custody (or vice versa) would impose a unique hardship on the Government. Indeed, the transfer of inmates between state and federal custody in Miami is a near daily occurrence. Moreover, given that Zapata is subject to pretrial detention in both his state and federal cases, his ability to prepare his defense in these cases would not be hindered by concurrent prosecution in the state and federal courts because his state and federal counsel are already obligated to visit him at the local jail as part of their trial preparation activities.

Putting aside for a moment the distinguishing features of *Shevelev*, it must be noted at this juncture that the Court is skeptical of the reason for the delay that has been proffered by the Government. The Government submits that it made the conscious decision to allow Florida to resolve the state charges against Zapata before proceeding on the federal indictment. But the record does not appear support that representation. Indeed, if the Government were consciously awaiting the resolution of Zapata's state cases, then why did the second and third prosecutors assigned to this case fail to enlighten the Court with regard Zapata's whereabouts after Judge Gayles transferred Zapata's case to "fugitive status"? And why has the Government failed to submit evidence (or even suggest) that it sought a federal detainer on Zapata while he was incarcerated at the local jail?[3] Moreover, given that Zapata's state charges are still pending, what motivated the Government this past January to suddenly deviate from its plan to prosecute Zapata after the resolution of Zapata's state cases? In sum, the record does not suggest that the Government has been diligent in its prosecution of Zapata; the record suggests that Zapata's federal case was simply ignored by prosecutors until the indictment was discovered under a pile on someone's desk. And that someone appears to have been the current prosecutor,

---

[3]   The implementation of such a detainer appears to feature prominently in cases that find consecutive-prosecution to be an appropriate reason for delay. *See, e.g., Shevelev*, 2014 WL 495393, at *3-4 (lodging a detainer evidenced the federal government's attempt to promptly prosecute the federal case); *United States v. Kelly*, No. 12-10451, 2021 WL 6143554, at *2 (11th Cir. 2021) ("The government's evidence [which included proof of a federal detainer] established that it was reasonably diligent in ensuring that it knew Kelly's whereabouts and that he would be transferred to federal custody to face the charges in this case once he was released from state custody.").

8

who timely proceeded to cure the problem and initiate the prosecution *notwithstanding* that the Florida state charges remain pending against Zapata. Those good faith efforts at complying with the Government's speedy trial obligations, however, undermine the theory that the pending state charges presented any obstacle to compliance with the Sixth Amendment in this case.

Given this record, we have reviewed the state of the law under these circumstances. Neither the Government nor Zapata have identified an Eleventh Circuit precedent that considers the narrow Sixth Amendment issue of a defendant simultaneously facing unrelated state and federal charges in the same city, and the Court has similarly been unable to locate such an on-point Eleventh Circuit case. In an unpublished opinion, however, the Eleventh Circuit has previously accepted the consecutive-prosecution rationale as a valid reason for post-indictment delay. *See Kelly*, 2021 WL 6143554, at *2. But a review of the record in that case reveals that the defendant was facing multiple prosecutions in multiple counties throughout the State of Florida, *United States v. Kelly*, No. 17-cr-00291, D.E. 37 at 3-4 (M.D. Fla. Aug. 7, 2020), which makes *Kelly* more relevant to this case than *Shevelev*.

Apart from that, the Supreme Court has made abundantly clear that a *Barker* analysis depends heavily on the unique circumstances of each case. *See Barker*, 407 U.S. at 533 ("[The *Barker* factors] are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."). Accordingly, Zapata turns to a Tenth Circuit case and argues that it is a

more relevant and instructive guide, and the Court is inclined to agree. *See United States v. Seltzer*, 595 F.3d 1170 (10th Cir. 2010).

In *Seltzer*, the primary reason asserted by the federal government for a two-year, post-indictment delay was its desire to allow the State of Colorado to resolve unrelated drug charges against the defendant before continuing with federal charges. *Id*. at 1177. After surveying other courts and noting that both the Fourth and Sixth Circuits accepted similar rationales in the past, the Tenth Circuit joined with the Third Circuit and opted to go the other way. *Id*. at 1177-78.

> We agree with our sister circuits that awaiting the completion of another sovereign's prosecution may be a plausible reason for delay in some circumstances, but that does not necessarily mean that it is a justifiable excuse in every case. Rather, it is the government's burden to explain why such a wait was necessary in a particular case. In other words, the government must make a particularized showing of why the circumstances require the conclusion of the state proceedings before the federal proceedings can continue. The mere fact that the defendant was incarcerated on a previous charge for a portion of the delay does not by itself excuse the delay. Thus, the government needs to show that it has a sufficient justification for waiting for the state proceedings in this particular case. No such showing has been made here. And the typical reasons for respecting ongoing state proceedings as a valid justification for delay are not relevant here.

*Id*. at 1178 (internal quotations and citations omitted).

The Tenth Circuit then articulated three reasons for why the consecutive-prosecution rationale was insufficient to justify the post-indictment delay in Seltzer's case. *Id*. First, there was no overlap between the state charges and the federal charges, which made it unlikely that concurrent prosecutions would give rise to "conflicting motions or assertions" in the different courts – a particular risk that expressly factored in to the Fourth Circuit's analysis. *Id*. Second, concurrent

10

prosecutions would not have been logistically cumbersome because of the close proximity between the state and federal judicial facilities, which were both located in Grand Junction, Colorado, and because nothing in the record suggested that transportation between state and federal jurisdictions in that city would have been "onerous." *Id.* And third, the simplicity of the charges against Seltzer demonstrated "the relatively light burden that proceeding with the federal prosecution would have imposed on the government." *Id.* In light of those circumstances, the Tenth Circuit held that the second *Barker* factor weighed against the government and, ultimately, merited the dismissal of the indictment against Seltzer. *Id.* at 1181.

Here, the Court finds *Seltzer* persuasive. Not only does the Government neglect to explain why it lost its patience with the State of Florida this past January, it also fails to specifically articulate why it was necessary to wait on the State of Florida in the first place. There is no overlap between Zapata's state and federal charges. There is no evidence in the record to suggest that concurrent state and federal prosecutions in the same city would pose an "onerous" logistical burden on the Government. And the Government has not identified any particular facts that might significantly complicate the prosecution of two relatively straightforward bank robbery allegations. The "ultimate responsibility" for justifying the delay belongs to the Government, and here that burden has not been satisfied. *See Barker*, 407 U.S. at 531.

In other words, the current prosecutor has tackled the case even though she is beset with the same problem, to the extent one can deem it a problem, that earlier

11

prosecutors had in dealing with the case while Zapata faced state charges. That has not seemed to have stopped her ability from running with the case, so it is not credible to believe that something so material changed from three years earlier that prevented other prosecutors from doing the same thing. Thus, we conclude that the present circumstances weigh against the Government on this score.

Admittedly, although the Tenth Circuit found in *Seltzer* that the second *Barker* factor weighed against the government, it notably did not find that the reason for the delay weighed "heavily" against the government. *See Seltzer*, 595 U.S. at 1181. But our record presents a clearer picture. Here, the Court is justified going a step further because of the dearth of evidence in the record that actually supports the Government's proffered reason for delay. Put differently, the Government's justification is not only insufficient but also substantially unsupported, raising serious concerns about the Government's diligence in implementing our Constitution's guarantee to Zapata of a "speedy" and public trial. So, our assessment of this factor weighs heavily against the Government in this case.

### C. *The defendant's assertion of the speedy trial right.*

Here, the Government concedes that Zapata has timely asserted his right to a speedy trial and the Court agrees. Since the appointment of his counsel, Zapata has been nothing if not diligent in reviewing the charges against him and asserting his Sixth Amendment right to a speedy trial. *See, e.g., United States v. Velazquez*, 749 F.3d 161, 184 (3d Cir. 2014) ("[K]nowledge of the indictment [is] the appropriate

measure for the timely assertion of the speedy trial right[.]"). As such, the third *Barker* factor weighs heavily against the Government.

### D. *The prejudice to the defendant as a result of the delay.*

Having found that the first three *Barker* factors weigh heavily against the Government, Zapata need not make a showing of actual prejudice to prevail on his Motion because actual prejudice is presumed. *See Ingram*, 446 F.3d at 1338. Nevertheless, the Court finds actual prejudice in two distinct ways.

First, Zapata has highlighted the difficulty in obtaining basic discovery from the prosecution that would have been created years ago (e.g., officer and forensic reports specifically relating to the bank robbery). Time erodes memory and here it appears that time has indeed made discoverable (and potentially exculpatory) evidence difficult to recover, which has in turn hampered Zapata's ability to diligently prepare his defense.

Second, as the Tenth Circuit noted in *Seltzer*, the significant post-indictment delay effectively deprived Zapata of the chance to invoke his statutory rights under the Speedy Trial Act at an earlier date. *See Seltzer*, 595 F.3d at 1180-81 (discussing 18 U.S.C. § 3161(c)(1)). The Speedy Trial Act requires that a defendant be tried within 70 days from the filing date of the indictment or from the date on which the defendant appears before a judicial officer, whichever date is later. *See* 18 U.S.C. § 3161(c)(1). Had the Government brought Zapata before a judicial officer in a timely fashion, he would have been afforded the protections of the statutory speedy trial clock at a much

earlier point – potentially before the pandemic delayed the flow of criminal cases through the dockets of the Southern District of Florida.

Zapata has sufficiently shown actual prejudice regardless of whether that showing is accomplished on the facts or by operation of law. And so, the balancing test mandated by *Barker* is decidedly one-sided here. Zapata's constitutional right to a speedy trial has been violated.

### III. CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge does hereby **RECOMMEND** that Defendant Ivan Dario Zapata's Motion [D.E. 12] be **GRANTED** and the indictment [D.E. 1] be **DISMISSED**.

Pursuant to Local Magistrate Rule 4(b), the parties have until May 17, 2022, to serve and file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C v Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 13th day of May 2022.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge